IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUCHOSSOIS INDUSTRIES, INC., an Illinois corporation, on its own behalf and/or as successor in interest to The Duchossois Group, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 2295 |
| v. | ) ) | Judge Robert W. Gettleman |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is a tax refund suit filed pursuant to 26 U.S.C. § 7422 by plaintiff Duchossois Industries, Inc. ("DII"), arising from a Mexican "debt equity swap" in the late 1980s. Plaintiff has asserted three separate grounds to support a motion for summary judgment in its favor. Because the court agrees with the first of these grounds - - the precedential affect of the Seventh Circuit's holding in Kohler v. United States, 468 F.3d 1032 (7th Cir. 2006) - - the court needn't reach the other two arguments.

Although the transaction itself was quite complicated, the basic facts are rather straightforward and uncontested. This case, like several others, arose from Mexico's inability to service its foreign debt when oil prices declined during the 1980s. As part of an effort to rescue its economy, Mexico began the so called debt-for-equity program to reduce or eliminate its debt held by foreign banks. Under this program, which is described in detail in the Kohler opinion, Mexico issued pesos that were restricted in their use at a substantial discount. The difference between the fair market value of these restricted pesos and the amount paid for them by the plaintiff taxpayer was determined by the United States Internal Revenue Service ("IRS") to be a taxable gain. Plaintiff's position, with which this court agrees, is that the government's failure to

assign <u>any</u> economic significance to the restrictions on the pesos renders its assessment to be "naked," thus destroying the presumption of validity normally enjoyed by the government in tax refund cases. Because this court agrees with plaintiff that the IRS' assessment of taxable gain in this case, as in <u>Kohler</u>, lacks any foundation and is therefore arbitrary and excessive, plaintiff is entitled to summary judgment.

## **FACTS**

In 1987, plaintiff's subsidiary the Chamberlain Group, Inc. ("CGI") operated in Mexico through a CGI affiliate, Perma-Mex, in connection with the construction of a factory in Nogales, Mexico, to produce garage door openers. During the land acquisition and construction period, CGI successfully applied for participation in the Mexican debt-for-equity program. Under this program, CGI paid $5.8 million[1] to First National Bank of Chicago ("FNBC") to purchase $11.7 million of Mexican debt held by FNBC. The parties agree that $5.8 million was at the time of the purchase the fair market value of obtaining an interest in $11.7 million of Mexican debt.

Upon purchase, the debt was transferred by FNBC to Mexico and retired, in exchange for which the Mexican government created an account in its control in the name of Perma-Mex, from which it dispersed $10.2 million worth of restricted-use pesos to Perma-Mex's contractors and vendors that were involved in the construction of the Nogales plant. The Mexican government permitted a "redemption rate" of 87%, and CGI received 18.5 million shares of restricted capital stock in Perma-Mex.

The restrictions placed by Mexico on the pesos distributed from the account included: (a) the Mexican government alone could distribute the pesos, which were distributed directly to

---

[1]The sums discussed in this opinion are rounded figures.

contractors and vendors; (b) those contractors and vendors had to be Mexican; (c) the pesos could be used only to build the pre-approved garage door opener plant in Nogales; (d) the plant's construction was to use only Mexican goods and labor; and (e) all purchases were to be made only in Mexican pesos.  In addition, the Perma-Mex stock was restricted to prohibit: (a) transfer to a Mexican citizen or company for ten years; (b) redemption on more favorable terms than the Mexican debt exchanged for the Perma-Mex stock; and (c) any right to guaranteed dividends to be paid independently of income or profits.

As the parent corporation, plaintiff filed all federal tax returns on behalf of its subsidiaries, including CGI, and reported no taxable gain resulting for the debt-for-equity swap. The IRS disagreed, assessing a recognized taxable gain of $4,399,914, representing the difference between the face amount of the restricted pesos disbursed by the Mexican government ($10.2 million) and the price CGI paid for the participation in the debt ($5.8 million), less related transaction fees.  Plaintiff paid the assessed tax and filed this refund action.

## DISCUSSION

In <u>Kohler</u>, the Seventh Circuit addressed a tax assessment in the same debt-for-equity program that is involved in the instant case.  In affirming summary judgment for the taxpayer, the court noted that "To permit the Internal Revenue Service to place an arbitrary value on difficult-to-value property obtained in a transaction and require the taxpayer to prove that it was worth less - - and exactly how much less - - would place an unreasonable burden on taxpayers. . . . When the government provides nothing more than a "`naked assessment,' which is to say `without any foundation whatsoever,' the taxpayer does not have to prove what the assessment should have been."  <u>Kohler</u>, 468 F.3d at 1036, (quoting <u>United States v. Janis</u>, 428 U.S. 473, 440

3

(1976)). Consequently, the government bears the burden both at the summary judgment and trial stages to show that its valuation analysis was not "naked" or "arbitrary." Because the government's position in the instant case is essentially the same as it was in Kohler, that precedent compels summary judgment for plaintiff. Indeed, it would be easy to switch the names of the taxpayers and the amounts in question and fit the instant case directly into the Kohler decision.

In Kohler, the taxpayer purchased $19.5 million in Mexican pesos for debt in the amount of $11.1 million. The pesos had the same restrictions[2] as the restrictions imposed in the instant case; e.g., requiring that the pesos be used only to purchase Mexican goods and services, prohibiting guaranteed dividends, and prohibiting transfer of stock to any Mexican citizen or company for a period of ten years. These restrictions were specifically discussed in Kohler as lowering the value of the pesos that were disbursed in that case, just as in the instant case. "A dollar restricted to being used to purchase the currency of a country in the throes of a financial crisis is worth less than a dollar." Id. at 1035-37. Addressing the government's assessment in Kohler, the Seventh Circuit rejected the government expert's opinion that the stock restrictions had no economic cost or adverse impact. Consequently, the tax assessment in Kohler was "without any foundation whatsoever" and therefore the assessment was "naked."

---

[2]The court agrees with plaintiff that the government's avoidance of the word "restrictions" in its brief in opposition to plaintiff's motion for summary judgment, and its substitution of the word "conditions," constitutes a transparent attempt to minimize the impact of these restrictions to justify its position that they do not decrease the value of the pesos or the stock involved. As plaintiff points out, both the Seventh Circuit and the Fifth Circuit in GM Trading Corp. v. Commissioner, 121 F.3d 977 (5th Cir. 1997) describe these very same "conditions" as "restrictions." Indeed, the government's expert, Dr. Cragg, referred to them as "restrictions." Of course, a rose is a rose by any other name, and it is the impact of these conditions or restrictions that devalues the pesos and lowers the value of the stock.

4

The only difference that this court can discern between the government's position in Kohler and the instant case involves what plaintiff describes, and the court agrees, is a "last minute, manufactured attempt" to distinguish the two expert opinions. As plaintiff points out, the government's expert in the instant case, Dr. Michael Cragg, is connected with the government's expert in Kohler (Cambridge Financial Partners), and has attempted to distinguish his opinion for the instant case from that in Kohler by reducing the value of the restricted pesos by 3.49% to account for the costs incurred in hedging against risk caused by "exchange rate fluctuations" between Mexican pesos and U.S. dollars. The court agrees with plaintiff, however, that a discount on the pesos caused by possible exchange rate fluctuations is completely unrelated to the restriction placed on the pesos themselves and the Perma-Mex stock.

Other than the discount for currency fluctuation, Cragg's report does not differ materially from the expert report rejected by the Seventh Circuit in Kohler. Like the Kohler expert opinion, Dr. Cragg opines that none of the conditions (or restrictions) on the use of the pesos have any economic significance to reduce the fair market value of those pesos, thus resulting in the alleged taxable gain to plaintiff. The assessment based upon this reasoning is as arbitrary and "naked" as it was in Kohler. The government has thus failed to "prove against all probabilities that its assessment was correct or pick a number that was prima facie plausible." Kohler, 468 F.3d 1037.

Because Kohler is binding precedent on this court, and its rationale and conclusion compel the finding that the government's assessment in this case was arbitrary and "naked," and because the government has failed to meet is burden of proof at the summary judgment stage by offering any facts from which a reasonable finder of facts could find otherwise, the court grants

summary judgment to plaintiff Duchossois Industries, Inc., and against defendant United States of America.

**ENTER:** **April 14, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**